Hay; Judge,
delivered the opinion of the court:
This is a suit brought by6 the plaintiff against the United States to recover the gross sum of $30,697.73. This sum is made up of nine separate claims growing out of a contract entered into by the plaintiff with -the United States providing for certain construction work at nitrate plant No. 2, Muscle ShoaU, Alabama.
The plaintiff performed the work-undertaken by it, and was paid the amount stipulated in the contract. During the progress of the work certain changes were made in the work, and controversies arose between the plaintiff and the officer in charge of the work. At the termination of the work the claims set out in the findings were filed in the War Department and were pending at the time of final payment. As these claims are separate and distinct from each other it will be best to take up each claim separately.
The first claim is for the sum $3,059.65, based upon the alleged failure of the United 'States to maintain the right of way which the defendant was to nrovide for ingress and egress to the place of storage of tire materials to be used on the work to be the place of ultimate use in construction. The contract provided: “ The U. S. of America to furnish at its pres'ent location on the reservation at U. S. Nitrate Plant No. 2, all other construction materials, the contractor to perform all necessary labor required in transporting such materials to the proper place for use in construction, the U. S. of America at all times to furnish the necessary right of way for ingress or egress to the place of present storage of such materials and the place of ultimate use in construction.”
The right of way which the United States furnished to the plaintiff consisted of railroad tracks running from the *591 side of the work to the storage yards. During the progress of the work the plaintiff, in order to keep the tracks in proper condition for the transportation of materials,, was obliged to expend the sum of $705.50 for labor in repairing-railroad tracks and $700.66 for making repairs to equipment damaged by reason of the defective tracks; and it also expended the further sum of $1,653.49 for labor in connection with derailments. When the plaintiff submitted its bids its representative ivas on the site of the work and saw what the condition of the right of way was.
There is nothing in the contract whicb-ohhgated the (rnv-ernment to*maintain the tracks. It is not denied that the right o'i way was furnished. An agreement to furnish a right of way does not carry with it the obligation to maintain it; and there wns no hreanh — of contract on the part of the Government,' ancfconsequently the plaintiff can not recover on this claim.
The second claim is for alleged extra work in the construction of wood trestle due to change in size and number of bents, and the direction to use old and salvaged lumber. This claim amounts to $8,356.30, and is avowedly a claim for extra work. The facts are fully set forth in Finding III. As to extra work the contract provides as follows: “No charge for any extra work will be allowed unless the same has been ordered in writing by the officer in charge, the price stated in the order, and accepted by the contractor.” TMs extra work, if it was extra work, was not ordered in writing by the officer in charge. In • order to recover for extra work the terms of the contract must be complied with.
The next claim is for extra cost of cement. This claim. is based upon the idea that because the price of cement ivent up between the time of submitting the bid and the time of signing Of the contract, the United States is responsible and must make good to the plaintiff the rise in price. The contract ivas signed by the plaintiff tAventy-three days after the bid was submitted. The plaintiff made no complaint as to the delay, and moreover the plaintiff knew when it submitted its bid that the price of cement was fluctuating. With full knowledge of this fact the plain *592 tiff can not be heard to complain of the cost of cement. The mere statement of this claim refutes its validity.
The next claim is that the Government did not furnish the coal which the plaintiff had to use during the performance of the work. The plaintiff claims that coal was a part of the material which the Government agreed to furnish. There is a schedule attached to the contract and made a part of it which recites the materials which the United States was to furnish; coal is not one of the materials there recited. Moreover the coal was used to operate the locomotives and other equipment furnished the plaintiff by the Government, and it is expressly provided in the contract that the plaintiff should “ provide all fuel and men to operate ” them. The plaintiff made this claim to the officer in charge who decided against it. The contract provides as follows:
“ Unless otherwise specifically set ■ forth the contractor shall furnish all materials, labor, etc., necessary to fully complete the work according to the true intent and 'Meaning of the drawings and specifications, of which intent and meaning the officer in charge shall be the interpreter. Except when otherwise indicated no local terms or classifications will be considered in the interpretation of the contract or the specifications forming a part thereof.”
The plaintiff must abide by the decision of the officer in charge.
The next claim is for materials which the Government alleges were not returned as provided for in the contract, and for which in the final settlement the plaintiff was charged the sum of $1,493.68. The plaintiff claims that the materials were returned. A list of this material was submitted to the plaintiff, which had been carefully checked by the Government. It does not appear from the evidence that these materials were returned, and under the terms of the contract the Government had the right to withhold from the plaintiff the value of these materials.
The next claim is for delay in arranging for plaintiff’s starting work. The plaintiff was to commence work on June 10, 1920, it started work on June 13, 1920. The delay was not unreasonable nor does it satisfactorily appear that the *593 delay was wholly caused by the Government. The plaintiff made no protest nor complaint at the time and did not file its claim until March 14, 1921. We do not think that it is entitled to recover.
The next claim is for delay due to a change in plans for a fill. The facts as to this delay are set out in Finding YIIT. A supplemental contract was entered into by the plaintiff with the United States t<5 cover the extra work made necessary by the change in plans, and the plaintiff was paid the sum of $2,515.54 under the terms of that contract. At the time of the making of this contract the plaintiff made no claim for delay and no protest was made by it at that time. The general work Avent on, no idleness resulted, and it does not appear that the plaintiff was damaged by reason of the change in the plan.
The next tAvo claims are for alleged delays in recalculating the amounts of concrete for coke hoppers and in connection Avith the change of plans for making earth fill for railroad tracks at river poAver house. In both of these cases the plaintiff entered into supplemental contracts with the United States and was paid in full for its work under the terms of those contracts. No claim was made by the plaintiff on account of delay Avlien these contracts Avere signed by it, nor at any time until March 14, 1921. No idleness of employees resulted, nor was the plaintiff damaged.
The petition must be dismissed. It is so ordered.
Doavkey, Judge; Booth, Judge, and Campbell, Chief Justice, concur.